UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No. 24-cv-10024

Magistrate Judge Elizabeth A. Stafford

---

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT (ECF NOS. 8, 10)**

---

## I.      Introduction

Plaintiff David H. appeals the final decision of defendant
Commissioner of Social Security (Commissioner), which denied his
application for disability insurance benefits (DIB) under the Social Security
Act.  Both parties have filed summary judgment motions and consented to
the undersigned conducting all proceedings under 28 U.S.C. § 636(c).
ECF No. 6; ECF No. 8; ECF No. 10.  After review of the record, the Court
**ORDERS** that:

- Plaintiff's motion (ECF No. 8) is **DENIED**;

- the Commissioner's motion (ECF No. 10) is **GRANTED**; and

- the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II.  Background

### A.  Plaintiff's Background and Disability Application

Born in September 1957, plaintiff was 62 years old when he applied for DIB in February 2020, with an alleged disability onset date of August 1, 2017.  ECF No. 4-1, PageID.32, 40.  He had past relevant work as an industrial organization manager.  *Id.*, PageID.39.  Plaintiff claimed disability from high blood pressure, insulin-dependent diabetes mellitus, high cholesterol, nasal inflammation, erectile dysfunction, toxic nodule goiter, history of acute pancreatitis, overactive thyroid, and tissue death of the pancreas.  *Id.*, PageID.92.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled.  *Id.*, PageID.32, 41.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.14.  Plaintiff timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, she found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2017. ECF No. 4-1, PageID.34. At the second step, she found that plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, necrosis of the pancreas and pancreatic cyst, thyroid nodule and subclinical hyperthyroidism, and diabetes mellitus. *Id.* Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.35.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform a reduced range of medium work,[2] except that he:

> could lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently. He could stand and/or walk about six hours and sit about six hours in an eight-hour workday. He could occasionally climb, and could frequently balance, stoop, kneel, crouch, and crawl.

---

[2] Medium work involves lifting or carrying no more than 50 pounds at a time; frequently lifting or carrying objects weighing up to 25 pounds; and standing or walking for six hours out of an eight-hour workday. 20 C.F.R. § 404.1567(c); Social Security Regulation (SSR) 83-10.

*Id.*  At step four, the ALJ found that plaintiff could perform his past relevant work as an industrial organization manager, categorized as light, skilled work (performed by plaintiff at the medium exertional level).  *Id.* at PageID.39.  Alternatively, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined at the final step that there were jobs in significant numbers that plaintiff could perform, including positions as a cleaner II, hand packager, and kitchen helper.  *Id.* at PageID.40.

## III.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such

---

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).  The substantial-evidence standard does not permit the Court to independently weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff challenges the RFC, arguing that the ALJ (1) improperly evaluated his subjective symptoms, (2) failed to address his mental limitations and to develop the record by ordering a mental consultative examination, and (3) improperly relied on opinions from the state-agency reviewing physicians.  ECF No. 8, PageID.1142-1150.  The Court disagrees and affirms the ALJ's decision.

**B.**

Plaintiff contends that the RFC is not supported by substantial

evidence, as the ALJ did not adequately consider his subjective symptoms.

*Id.*, PageID.1142-1149.  The regulations set forth a two-step process for

evaluating a plaintiff's subjective symptoms.  First, the ALJ evaluates

whether objective medical evidence of an underlying condition exists and

whether that condition could reasonably be expected to produce the

alleged symptoms.  20 C.F.R. § 404.1529(a); Social Security Ruling (SSR)

16-3p.  If so, the ALJ assesses any work-related limitations by determining

the intensity, persistence, and limiting effects of these symptoms.  20

C.F.R. § 404.1529(a); SSR 16-3p.  In sum, ALJs assess whether the

symptoms claimed are "consistent with the objective medical and other

evidence in the individual's record."  SSR 16-3p.

To evaluate the limiting effects of subjective symptoms, ALJs

consider all available evidence, including the plaintiff's history, laboratory

findings, statements by the plaintiff, and medical opinions.  20 C.F.R.

§ 404.1529(a).  Although a plaintiff's description of his symptoms will "not

alone establish that [he] is disabled," *id.*, the ALJ may not disregard the

plaintiff's subjective complaints because they lack substantiating objective

evidence, SSR 16-3p.  Along with objective evidence, ALJs must consider

7

a plaintiff's daily activities; the location, duration, frequency, and intensity of
pain; precipitating and aggravating factors; the type, dosage, and side
effects of medication to alleviate symptoms; and any other treatment or
measures used to relieve pain.  20 C.F.R. § 404.1529(c)(3).

The ALJ accurately summarized plaintiff's reported symptoms and
concluded that the alleged "intensity, persistence and limiting effects of
these symptoms are not entirely consistent with the medical evidence and
other evidence in the record."  ECF No. 4-1, PageID.36 (citing ECF No. 4-
1, PageID.62-66, 255-262).  She reasoned that the medical evidence
"shows mostly normal signs on exam and does not document any muscle
atrophy or weakness that would suggest that the claimant is limited to that
degree."  *Id.*, PageID.36.  The ALJ discussed the medical records relevant
to plaintiff's diabetes, pancreatic conditions, thyroid conditions, and back
pain.  *Id.*, PageID.36-37.

Plaintiff insists that the objective medical records support his alleged
limitations.  ECF No. 8, PageID.1144-1148.  He cites records documenting
his inpatient treatment for acute pancreatitis; later imaging showing a
pancreatic cyst; and the allegedly "persistent symptoms" after discharge
and "notable progression" of the condition, including fatigue and
uncontrolled blood sugar.  *Id.*, PageID.1144-1145 (citing ECF No. 4-1,

PageID.350, 546; ECF No. 4-2, PageID.642, 725-726, 721-739, 775).  He also cites his emergency treatment for abdominal pain in March 2018.  *Id.* (citing ECF No. 4-2, PageID.775).

The ALJ discussed many of those records but found that later imaging showed that the pancreatic cyst had decreased in size and was stable, that plaintiff reported minimal symptoms, and that his physical examinations were normal.  ECF No. 4-1, PageID.37.  The ALJ also observed that plaintiff's diabetes improved after he began taking Tresiba. *Id.*, PageID.36.  Although plaintiff's blood sugar levels were sometimes elevated, he reported feeling well, and his physical examinations were normal with no complications.  *Id.*, PageID.36-37.  Substantial evidence supports the ALJ's reasoning.

On July 28, 2017, plaintiff went to the emergency department for severe abdominal pain, nausea, and vomiting and was diagnosed with acute pancreatitis caused by his blood pressure medication.  *Id.*, PageID.328-331.  Admission was recommended, but plaintiff declined and returned the next day with worsening symptoms.  *Id.*, PageID.321.  A July 31, 2017, CT scan showed worsening pancreatitis with increased inflammatory changes, and possible necrosis of the mid-body and extending into the tail of the pancreas.  *Id.*, PageID.350.  The next day,

plaintiff was tolerating a soft diet, was pain-free, and requested to be discharged. *Id.*, PageID.313-314.

In the weeks after his hospitalization, plaintiff followed up with his primary care doctor, Matthew Benedix, D.O.  During his appointments, plaintiff reported that he was improving and felt "fairly well," and his physical examinations were normal, although his blood sugar, A1C, and thyroid levels were high.  *Id.*, PageID.416-426.  Plaintiff had several more appointments with Dr. Benedix in 2017, during which he felt well and his physical examination findings were normal.  *Id.*, PageID.404-415.  Because plaintiff's blood sugar was not well controlled on his medications, Dr. Benedix prescribed Tresiba in December 2017.  *Id.*, PageID.404.  By February 2018, plaintiff was "feeling very well" and was "doing great" with his blood sugar and A1C.  *Id.*, PageID.401, 460.  And in May 2018, plaintiff again reported feeling very well and had a normal physical examination (including diabetic foot exam); Dr. Benedix considered plaintiff's diabetes controlled.  *Id.*, PageID.394-396.  Medical records show that plaintiff had "fair control" of his diabetes with no complications through May 2022.  ECF No. 4-2, PageID.566-567, 580-581, 585-586, 589-591, 996-997, 1005-1007, 1053-1055, 1085-1086, 1115-1117.

In March 2018, plaintiff returned to the emergency room with intense abdominal pain and bloating.  *Id.*, PageID.763-766.  He had mild abdominal distention, but his physical examination was otherwise normal.  *Id.*, PageID.765.  An x-ray showed a large amount of stool in the colon but no intestinal obstructions.  *Id.*, PageID.766, 775.  Plaintiff reported feeling better, and he was restricted to a clear liquid diet for 24 hours and was told to follow up with gastroenterology.  *Id.*, PageID.766.  When plaintiff saw Dr. Benedix two months later, he reported feeling very well, and his physical examination was normal.  ECF No. 4-1, PageID.394-396.  Plaintiff saw another primary care physician, Eileen Kuet, M.D., in July 2018, and denied any abdominal pain.  ECF No. 4-2, PageID.565.

Plaintiff saw Amit Bhan, M.D., a gastroenterologist, in September 2018 to follow up on his pancreatitis.  ECF No. 4-1, PageID.540-542. Plaintiff denied nausea, vomiting, abdominal pain, and bloody stools.  *Id.* Dr. Bhan stated that plaintiff was doing "clinically well" but ordered a CT scan.  *Id.*  The scan showed a 5.8 cm cystic lesion on the pancreas with several areas of the wall that were mildly thickened or irregular that could reflect an area of walled off necrosis or cystic neoplasm.  ECF No. 4-2, PageID.722-723.  When plaintiff saw Dr. Bhan in November 2018, he reported no abdominal pain or other symptoms, and Dr. Bhan again noted

11

that he was doing "clinically well" with normal physical examination findings.  ECF No. 4-1, PageID.546-549.  But Dr. Bhan ordered repeat CT scans.  *Id.*

The CT scans, taken in November and December 2018, did not suggest progression of the pancreatic conditions as plaintiff argues.  ECF No. 4-2, PageID.725-731.  The November scan supported a diagnosis of pancreatic pseudocyst or an area of walled off necrosis, although a preexisting cystic lesion could not be ruled out.  *Id.*, PageID.726.  The December scan did not offer ideal visualization but stated that the September scan showed a cystic lesion that was likely a pseudocyst caused by the pancreatitis in 2017.  *Id.*, PageID.730-731.  During a follow-up appointment with gastroenterology in January 2019, plaintiff denied abdominal pain or any other symptoms.  *Id.*, PageID.603.  The provider noted that the CT scans supported a finding of walled off necrosis and recommended continued monitoring.  *Id.*, PageID.605-607.  Given the normal physical examination findings, the intact surrounding vasculature of the pancreas, and the absence of symptoms, there was no need for further intervention.  *Id.*

Plaintiff's next CT scan in June 2019 was similar to the other scans, showing a 5.6 cm lesion on the pancreas with subtle thickening of the wall,

suggesting a pseudocyst.  *Id.*, PageID.732-733.  Dr. Kuet noted that the scans had been stable but recommended continued surveillance.  *Id.*, PageID.589.  Plaintiff's physical examinations were normal, and he denied abdominal pain through April 2020.  *Id.*, PageID.580-582, 584-586, 590-591.  In April 2020, plaintiff told Dr. Kuet that he sometimes had pressure in his upper abdomen when he sat, but his physical examination was normal. *Id.*, PageID.1004-1007.

In October 2020, another CT scan showed that the pancreatic cyst had decreased in size to 5.3 cm, with the thickening along the wall less noticeable.  *Id.*, PageID.998, 1009-1011.  During a gastroenterology consult two weeks later, plaintiff reported right upper quadrant discomfort but denied any other symptoms.  *Id.*, PageID.998-999.  Plaintiff explained that he had been doing housework involving reaching and lifting just before the discomfort began.  *Id.*  Physical examination findings were normal, imaging was stable, and plaintiff was asymptomatic.  *Id.*, PageID.1001-1002.  The doctor believed that the abdominal discomfort was musculoskeletal and recommended new pancreas imaging in one to two years.  *Id.*  The medical records through the remainder of relevant period show that plaintiff had minimal complaints about abdominal discomfort, that physical examination findings were normal, and that CT scans remained

13

stable.  *Id.*, PageID.995-997, 1053-1055, 1085-1087, 1098-1101, 1115-1117.

Plaintiff contends that his reported limitations are also supported by medical records documenting his low back pain, bilateral hip replacements, leg swelling, and use of a cane.  ECF No. 8, PageID.1145-1148 (citing ECF No. 4-2, PageID.721-739, 775, 1046).  The ALJ acknowledged these conditions and addressed many of these records.  ECF No. 4-1, PageID.36-38.  But despite some limited complaints of low back pain, plaintiff did not seek treatment.  *Id.*, PageID.37.  The ALJ also discussed the consultative examination findings that plaintiff had "minimally reduced range of motion" with flexion of the lumbar spine and in the bilateral hips and that he could walk without an assistive device.  *Id.*, PageID.38.  Last, the ALJ noted that plaintiff was capable of physical activity given his performance on a stress test and the fact that he exercised at home.  *Id.*  Substantial evidence supports the ALJ's conclusions.

Some of the imaging studies of plaintiff's chest and abdomen have incidentally documented bilateral hip prostheses and mild, multilevel degenerative changes of the lumbar spine likely related to osteopenia.  *Id.*, PageID.388; ECF No. 4-2, PageID.723, 726, 730, 733, 775, 1010.  But the ALJ is correct that plaintiff sought no specific treatment for his low back and

14

hip pain.  Physical examinations were often normal, and plaintiff did not complain about back discomfort until July 2018.  *See, e.g.*, ECF No. 4-1., PageID.402, 413, 417, 421-411, 425-426, 535, 538; ECF No. 4-2, PageID.565-567.  A physical examination revealed tenderness and pain in his lumbar back, but plaintiff declined a muscle relaxer, and his straight leg raise was negative.  ECF No. 4-2, PageID.565-567.

The records do not reflect complaints of back or hip pain for almost two more years.  During that time, plaintiff's musculoskeletal examinations, range of motion, and gait were normal.  *Id.*, PageID.574, 586, 590, 605; ECF No. 4-1, PageID.548-549.  In April 2020, plaintiff reported hip pain and claimed that he could only walk 500 feet before needing to stop.  ECF No. 4-2, PageID.1005.  But his physical examination was normal, and Dr. Kuet noted that he did not use a cane and did not qualify for a handicap parking permit.  *Id.*, PageID.1005-1006.  Plaintiff again complained of low back pain in December 2020 and stated that he tried to do stretches.  *Id.*, PageID.996.  But physical examination findings remained normal, and Dr. Kuet did not prescribe any treatment.  *Id.*, PageID.996-997.

In April 2021, consultative examiner Kirsten Podvin, RN, FNP-C, evaluated plaintiff.  *Id.*, PageID.1043-1048.  Plaintiff reported that he had leg pain and swelling with walking, but Podvin observed that his gait and

station were normal and that he did not require an assistive device.  *Id.*, PageID.1043, 1045.  Range of motion was mildly decreased with flexion of his lumbar spine and with most movements in his hips but was otherwise normal.  *Id.*, PageID.1045-1047.  During November 2021 and May 2022 visits with Dr. Kuet, musculoskeletal examination findings were again normal, and plaintiff did not complain of musculoskeletal pain.  *Id.*, PageID.1085-1086, 1115-1117.

As for plaintiff's allegations of leg swelling, the vast majority of records note no edema in his lower extremities.  *See, e.g.*, ECF No. 4-1, PageID.394-426, 535, 537, 539; ECF No. 4-2, PageID.574, 586, 590, 997, 1001, 1045.  And when plaintiff had mild edema in his legs and feet in April 2021, November 2021, and May 2022, there was no sign that it impeded his functional ability.  ECF No. 4-2, PageID.1055, 1086, 1117.

Citing *Rogers v. Comm'r of Soc. Sec.,* plaintiff also contends that the ALJ's reliance on his daily activities was flawed, as his "somewhat minimal daily functions" differed from typical work demands.  ECF No. 11, PageID.1181-1182.  But *Rogers* is an inapt comparison.  In that case, the ALJ's entire rationale for discrediting the plaintiff's fibromyalgia symptoms was unsound.  486 F.3d 234, 248-49 (6th Cir. 2007).  Although the ALJ noted the lack of objective medical evidence, the Sixth Circuit recognized

16

that fibromyalgia often cannot be diagnosed with objective data.  *Id.*  The

ALJ also mischaracterized the plaintiff's testimony about her daily activities

and suggested that light housekeeping, driving for a few minutes, preparing

simple meals, and opening a door to let a dog out were akin to normal work

activities.  *Id.*  Unlike *Rogers*, the substantial evidence discussed above

supports the ALJ's conclusion that plaintiff is capable of physical activity.

And plaintiff's daily activities of light cleaning, laundry, minor repairs,

mowing the lawn, and light exercises in his home gym bolster that

conclusion.  *See* ECF No. 4-1, PageID.36, 38 (citing ECF No. 4-1,

PageID.66, 257-258).

## C.

Plaintiff next argues that the ALJ failed to address his reported mental

health impairments, including depression, impulsiveness, insomnia, and a

history of transient ischemic attacks (TIAs).  ECF No. 8, PageID.1148-

1149.

At step two, an ALJ first assesses whether the plaintiff has "a

medically determinable physical or mental impairment, then determines

whether [the] impairment is severe."  20 C.F.R. § 404.1521 (cleaned up).  A

medically determinable impairment "must result from anatomical,

physiological, or psychological abnormalities that can be shown by

medically acceptable clinical and laboratory diagnostic techniques." *Id.*  It must be shown by objective medical evidence and cannot be based on a plaintiff's "statement of symptoms, a diagnosis, or a medical opinion." *Id.* Objective medical evidence includes medical signs and laboratory findings using diagnostic techniques.  SSR 16-3p; *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 421 (6th Cir. 2013) ("The plaintiff still bears the burden of demonstrating that he suffers from a medically determinable physical impairment—a burden that requires medical signs and laboratory findings." (cleaned up)).

Although the ALJ acknowledged plaintiff's subjective reports that he has trouble remembering, completing tasks, concentrating, and following instructions, she found that plaintiff had no severe mental impairments and included no mental restrictions in the RFC.  ECF No. 4-1, PageID.34-36. And nothing in the record suggests that plaintiff has a mental impairment. Examinations routinely noted that his neurological signs, mood, affect, speech, and behavior were normal.  *See, e.g.*, *id.*, PageID.549, 552; ECF No. 4-2, PageID.567, 574, 578, 586, 765, 1006-1007, 1045, 1055, 1087. And plaintiff often denied any depressive or other psychiatric symptoms. *See, e.g.*, ECF No. 4-2, PageID.806-808, 854-856, 879-881, 904, 921-923, 946-948, 982-983, 1045.  No records show that plaintiff ever sought mental

health treatment.  And although plaintiff told Podvin that he had a TIA in 2001, he cites no records showing that he had any TIAs during the relevant period or that he has any neurological deficits.  *See id.*, PageID.1043. Thus, no objective records show that plaintiff has any mental impairments. Nor did the ALJ err by excluding mental limitations from the RFC, as an ALJ "must consider *only* limitations and restrictions attributable to medically determinable impairments."  *See* SSR 96-8p (emphasis added); *see also Kendalee L. R. v. Kijakazi*, No. 4:21-cv-00141, 2022 WL 4599184, at *7 (D. Idaho Sept. 30, 2022).

Plaintiff contends that the ALJ failed to develop the record by ordering a mental consultative examination.  ECF No. 8, PageID.1149-1150.  But that position conflicts with authority in this circuit.  The pertinent regulations do not require an ALJ to refer a claimant to a consultative examiner; they merely grant the authority to do so "if the existing medical sources do not contain sufficient evidence to make a determination."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1520b(b)(2).  And plaintiff has "the burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination."  *Landsaw*, 803 F.2d at 214.

The ALJ did not err by failing to obtain a mental consultative examination.  As described, the records uniformly reflected that plaintiff had no neurological or psychological impairments.  Given the absence of conflicting records, nothing suggests that the ALJ lacked sufficient evidence to make her decision.  *See Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th Cir. 2013) (finding no error where the record contained ample evidence of the plaintiff's cardiovascular condition and none of the evidence conflicted).

### D.

Last, plaintiff faults the ALJ for relying on the opinions of state-agency experts about plaintiff's physical RFC, as they did not examine plaintiff and offered opinions that conflicted with the record.  ECF No. 8, PageID.1149-1150.  State-agency physicians "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."  SSR 17-2p.  ALJs are thus entitled to accord great weight to state-agency physicians if their opinions are supported by the record. *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004).

The ALJ found partially persuasive the state-agency physicians' opinions that plaintiff could perform medium work but could only occasionally climb ladders, ropes, and scaffolds.  ECF No. 4-1, PageID.39

(citing ECF No. 4-1, PageID.90-92, 102-103).  She reasoned that the opinions aligned with plaintiff's "minimal complaints over the period at issue and conservative treatment," as well as with records reflecting "mostly normal objective signs."  *Id.*  But she added to the RFC limitations that plaintiff could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, given the restricted range of motion in his lumbar spine and hips.  *Id.*

A plaintiff faces an uphill battle when, as here, the ALJ found him more restricted than the state agency consultant. *See McCoy v. Kijakazi*, No. 21-11739, 2023 WL 3407159, at *7 (E.D. Mich. Feb. 27, 2023), adopted, 2023 WL 3147899 (E.D. Mich. Apr. 28, 2023) ("An ALJ's more restrictive finding than that of the state agency physician's may lend support for the ALJ's finding." (cleaned up)); *Brooks v. Comm'r of Soc. Sec*., No. 20-13246, 2022 WL 2163018, at *3 (E.D. Mich. May 23, 2022), adopted, 2022 WL 2161485 (E.D. Mich. June 15, 2022) ("Courts in this circuit have routinely found RFC assessments that are more restrictive than the opinion evidence to be supported by substantial evidence.").  For this reason and those discussed above, the ALJ's rationale for the RFC is supported by substantial evidence.

## IV.    Conclusion

The Court **DENIES** plaintiff's motion for summary judgment (ECF No.

8), **GRANTS** the Commissioner's motion for summary judgment (ECF No.

10), and **AFFIRMS** the ALJ's decision under sentence four of 42 U.S.C.

§ 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 31, 2025

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 31, 2025.

s/Davon Allen
DAVON ALLEN
Case Manager
